### MELE LINDSEY *vs.* KAINANA ET AL.

ON EXCEPTIONS FROM THE CIRCUIT COURT OF THIRD JUDICIAL DISTRICT, NOVEMBER TERM, 1878.

A JUDGMENT IN A DISTRICT COURT not having been docketed in the office of the Clerk of the Supreme Court, the execution issued thereon and Sheriff's sale of the land attached are illegal and void.

In this Kingdom a judgment of a Court of Record is not a lien upon real estate in the nature of a subsisting encumbrance.

Opinion of a majority of the Court by McCULLY, J.

The following bill of exceptions was allowed by Mr. Justice JUDD:

"This cause coming on to be heard before Mr. Justice JUDD on the ninth day of November, 1878, and after the introduction of the Royal Patent No. 2,122, description of the land in dispute, deed of J. W. Kahiamoe, the patentee, to

Geo. K. Lindsey, and his last will and testament, and proof of the value of the land by S. Kipi, and evidence of the plaintiff as appears by record of the presiding Judge, the plaintiff rested.

"Upon the part of the defendant it was sought to be proved that an execution was issued out of the District Court of Hamakua, and a levy on the property in dispute, and that the land in question was sold under the said levy by the Sheriff to Nainoa and by Nainoa conveyed to Kainana, one of the defendants; and after hearing all the evidence produced upon the part of the defendant, as appears by the record of His Honor the Judge, it was moved on the part of the plaintiff that the evidence of deed of Kuao to Nainoa, and of Nainoa to Kainana, be stricken out upon the grounds that there was no evidence of search for them, no notice to produce them, or that they were not recorded, or that there had been sufficient evidence to show their contents; which motion was overruled by the Court, to which ruling the plaintiff noted exceptions. The Court reserved its judgment, jury trial being waived, and on the 13th day of November, 1878, the Court rendered judgment in favor of the defendants, to which the plaintiff excepted as being contrary to the law and evidence. All of which is respectfully submitted, so that the said plaintiff may have her bill of exceptions allowed as before set forth.

"The notes of evidence taken by the presiding Judge are considered to be incorporated herein, and the papers in the case are hereto annexed."

#### BY THE COURT.

The papers in the case as well as the Judge's notes having been in effect included, for the sake of reference, in the bill, the arguments of counsel were made and the opinion of the Court proceeds on matters which do not appear fully in the exceptions as above recited. Such matters are stated in the opinion.

It appears from the Judge's notes sent up as part of the

record that the Sheriff's deed, which is the origin of the defendant's title, was never recorded and has been lost, and was sought to be established by oral testimony; and it farther appears that the title of the land in controversy was originally in Kahiamoe, who held by royal grant. The first question in the case is whether Kahiamoe had been divested of this title, at the time he made a deed to the plaintiff's deceased husband, by a previous judgment in the District Court of Hamakua, followed by an execution from that Court, levy and sale of the premises. These proceedings were had in the year 1860, at which time the Civil Code was in operation.

Chapter XVIII of the Civil Code is entitled "of the issuing of executions and proceedings thereupon," of which the first section, numbered 1016, reads: "Every Circuit Judge at Chambers, Police Justice and District Justice shall, at the request of the party recovering judgment in his Court, unless duly appealed from, issue execution against the property of the person recovered against, which execution may be in the following form:

"You are commanded to levy upon the personal property of —— ⸰————, if any within your district, and if sufficient cannot be found, then upon his real property within said district, and giving thirty days' previous notice as required by law, to sell the same, etc."

Section 908 of the Civil Code, which is included in Chapter XV, "Of the Island Courts not of Record," reads: "No judgment rendered in said (Police) Justices' Courts shall be a lien upon real property, until a transcript thereof, certified by such Justice, shall have been docketed in the office of the Clerk of the Supreme Court. Such Justices' judgment shall be a lien upon the movable property of the defendant in execution not exempted by law from levy from the time and according to the priority of the levy."

The provisions of the last quoted section are not repeated under the Chapter "Of the District Courts," but inasmuch as

the Police Courts are only District Courts, with some special additional jurisdiction, it is not doubted that the judgment of a District Court is equally restrained, and, therefore, no judgment of a District Court is a lien upon real property until a certified transcript thereof is docketed in the Clerk's office of the Supreme Court.

The language of Section 1016 is general, giving Circuit Judges in Chambers and Police and District Justices power to issue execution, in a prescribed form, upon the personal property of a defendant, and if sufficient cannot be found then upon real property. It is the latter clause which is the foundation of the power of a Justice's Court to issue an execution to be levied on real estate.

The alienation of the fee of real estate by sale on execution was unknown to the common law. The use and profits of the land were sequestrated by a writ of *elegit* for a part of the land, or of *extent* for the whole of it, for a time sufficient to satisfy the judgment from the profits, during which it was held in trust by the judgment creditor. Kent's Com. IV, side page 429.

The sale of the land as is now so generally practiced in the American States and as has always been done in this country since the establishment of courts, is a statute proceeding, and the statute prescriptions must be exactly followed.

What, then, is the force of Section 908? It is contended by counsel for the defendants, that docketing a Justice's judgment in the Clerk's office, makes it a charge, an incumbrance on the real estate (subsisting without levy made) which follows the real estate, like an unsatisfied mortgage, till barred by the Statute of Limitations; but that there was authority under Section 1016 to make an immediate levy and thereby hold and sell real estate.

We are of opinion that the language of the section and the purview of the code will not sustain that view.

We have no statute making a judgment of Court of Record

a lien upon real estate in the nature of a subsisting incumbrance. The judgment constitutes no property or right in the land. It only confers a right to levy on the same. By section 1021, the officer is directed to give priority in levying according to the order of time in receiving the writs of execution, without reference to the date of the judgment. The earlier judgment creditor who has allowed his judgment to stand is liable to have the debtor's property exhausted by an execution taken out on a later judgment.

"The lien of judgment as a lien upon real estate, and which is so prevalent in the United States, was adopted from the English Statute of 4 and 5 W. M. 20, which has been improved by the statute of 1 and 2 Vict. C. 110, requiring a memorandum of the judgment to be entered on the book in alphabetical order, and a fresh memorandum thereof to be made after five years from the first entry." Note, Kent's Com. IV, p. 435.

In New York, judgments and decrees cease to be a charge on the lands as against purchasers in good faith, and as against subsequent incumbrancers from and after ten years from the docketing of the same. N. Y. Revised Statutes 11, 182, Sections 96, 97. In the New England States, the judgment is no lien and the lands are not bound until execution issued, but may be attached in the first instance by mesne process, thus creating a valid lien. Kent's Com. IV, p. 435. In Pennsylvania and in Illinois, the judgment is a lien for seven years. In other States there are different provisions.

In the absence of a statute of this Kingdom making judgment of a Court of Record a charge on real estate, the question would arise, whether by the use of the word "lien" in the 908th Section, the Legislature intended to give a greater scope to the judgment of the District Court, when docketed as prescribed, than is given to the judgment of the superior court. And it seems to us that the last clause of the section supplies a full explanation of the sense in which the word is

22

used in the first clause. In the last clause it is said that "the judgment is a lien after levy made and according to the priority of the levy on personal property." Thus the words of the statute are not that the levy is a lien, but that the judgment is a lien after levy; it is the levy which makes the judgment a lien. So, likewise, the first clause means that there shall be no lien created, that is to say, through the means of the levy, except after docketing. The word "lien" must be taken to mean something in the statute, and as there is no statute in this country constituting a judgment a lien, it must mean that no lien shall be created by authority of the judgment, that is, no levy shall be made by the authority of the judgment until after the docketing in the Clerk's office.

In the case under consideration, the judgment of the District Court had not been docketed; and the levy and sale were illegal and conveyed no title.

It is somewhat surprising that the question, here discussed, has not heretofore come before the Court. The language of Section 1016 might well have been taken by Justice and Sheriff's officers, to warrant levy direct on real estate, but we find by examination which we have had made in the office of the Registry of Deeds, that there is but one deed of record, by a Sheriff selling real estate under an execution, proceeding from a District Court. The existing statutes are a copy of the provisions found in the Procedure Code of 1857. The uniform practice for perhaps thirty years, has been to docket the judgment in the Clerk's office when it was known that the personal property would not be sufficient, and then to take out execution from the Supreme Court, as upon a judgment thereof.

We have nothing to say about executions so taken out which may have been issued by virtue of Section 1029, since our record does not show whether property levied upon or sought to be levied upon was within the district of the Magistrate giving the judgment, but we may call attention to the

course prescribed by our statutes. The District or Police Court issues its writ of execution upon its judgment, which is to be levied upon personal property if there be sufficient of it, and if not, then (if the transcript has been duly docketed), on the real property of defendant within the district; but if the judgment is not then satisfied, Section 1029 of the Civil Code provides that upon the return of the writ, and procuring a certified copy of the judgment and execution in the Court below, to be docketed in the office of the Clerk of the Supreme Court, the plaintiff may sue out a writ of execution, which shall be available against the property of the plaintiff wherever situated within the Kingdom.

We may further remark that the circumstances of this case forcibly illustrate the necessity of such docketing, as the law requires. Almost all trace of record of the proceedings in the District Court was lost. At first it was said that the Justice's record book was lost or destroyed. It had not passed to the successor in office, and had not been seen for years; but at a late stage of the trial it was produced, and an obscure entry was found which was taken to be the entry of this judgment. The writ and return of the Sheriff are not in existence. And further, as it has been said above, the deed of the Sheriff had been lost and never recorded.

There is evidence to show that Mr. Lindsey when he drew the conveyance from Kahiamoe to himself was cognizant of the previous sale by the Sheriff or Constable, and was a purchaser affected by notice. That would prevent him from setting up the non-record of the deed, but it would not cure the defects of an illegal sale. If Kahiamoe's land had not been legally levied upon and sold, the title remained in Kahiamoe, and Lindsey might purchase from him notwithstanding his knowledge of the term of levy and sale.

There was an important objection made to the validity of the sale, that the Sheriff's officer who made the sale was himself the purchaser. Nainoa both sold and purchased the land, but perhaps procured the Sheriff to sign his deed.

Another objection was, that at the sale this officer, conceiving that the wife of the defendant in execution owned one-third of his land by her right of dower, put up and sold only an undivided two-thirds of the piece.

It will be remarked that few pretended titles are so infirm as the one based on this sale, with nearly all its record lost and what is established by testimony showing such irregularities. But with our view of the main point in the case, it will be unnecessary to consider others.

The exceptions are sustained and the finding for the defendant is set aside, and judgment is given to the plaintiff.

E. Preston and Cecil Brown for plaintiff.

R. F. Bickerton for defendant.

---

I find myself unable to concur in the foregoing decision.

A. FRANCIS JUDD.

Honolulu, February 28, 1879.

---

## SUPREME COURT—IN BANCO.

---

### JANUARY TERM—1879.

*Harris, C. J., Judd and McCully, J. J.*