## IN THE MATTER OF S. AH MI, A BANKRUPT.

### February 18, 1907.

*Lien of judgment creditor—Attorney's lien on judgment—Jurisdiction of bankrupt court to approve sale by officer levying execution—Fees and expenses of such officer:*

Judgment was obtained by a creditor against the bankrupt more than four months previous to adjudication, and execution taken out and levy made within the four months. Sale of the property had been advertised and was about to be made, at the date of adjudication. On motion of plaintiff and for saving of expense to the estate, the court of bankruptcy ordered the officer making the levy to proceed with the sale.

*Held*, that under the circumstances no lien in the bankrupt property levied upon was created in favor of the plaintiff.

Also, that plaintiff's attorneys had no lien on said judgment.

Also, that as such officer was acting for the time being as the agent of the bankrupt court, the question of the approval of the sale made by him should be considered on its merits so far as such court is concerned, but that his claim for fees and expenses should be referred to the bankruptcy court proceedings.

*In Bankruptcy*: Petition for confirmation of sale and instructions.

*Thompson & Clemons,* Attorneys for Petitioner.
*W. W. Thayer,* Attorney for Trustee.

DOLE, J.   It appears that a judgment was obtained by one Mary Buckle, a creditor of the bankrupt, more than four months prior to the adjudication upon which judgment execution issued and levy was made within four months prior to such adjudication.   After adjudication, Mary Buckle moved for an order that certain property described and taken under such levy be sold free from any lien of any trustee of the said bankrupt so far as this court is concerned and that whatever lien or title such trustee may have in said property may attach to the proceeds of said sale but not waiving any rights which the said Mary Buckle may have in said property which she claims by virtue of a prior levy of judgment and execution, she claiming her right to the proceeds of such sale so far as the same may be needed to satisfy her judgment and execution levied on.   The court signed an order that so far as the jurisdiction of this court in bankrupt is concerned, and so far as the creditors of said S. Ah Mi and any trustee in bankruptcy that may be appointed in said matter, have any title or claim, the sale may be made and the property sold free from any claim or title of said bankrupt estate or of the creditors thereof or the trustee, provided that whatever claim or title the said estate, the creditors or the trustee may have in such property shall attach to the proceeds of such sale subject to all prior rights of the said Mary Buckle.   The sale was accordingly made in part, and the petitioner, after stating the circumstances thereof with the results, further alleged that three replevin suits had been brought against him to stay the sale of certain live stock under said execution and that upon due qualification of bondsmen in such suits the property replevied was delivered to the plaintiffs; also that an action of trover had been instituted for the recovery of the proceeds of certain of

12—D

the property sold as aforesaid; also that the trustee had demanded delivery of all of the property and choses in action of the bankrupt in the possession of the petitioner; also that the attorneys of the said Mary Buckle, Messrs. Thompson & Clemons, claim a lien upon the said judgment and the proceeds of the execution sales thereof for their services in obtaining the same and in protecting the interests of their said client, Mary Buckle, and any other parties in interest under the said execution sales. The petitioner further states that he desires the assistance of the said Thompson & Clemons, who are familiar with the facts of the said four suits, in the defense thereof; and prays that the sale be confirmed and that he be instructed by this court as to the disposition of the proceeds thereof, particularly with reference to the following questions: "(a) Has the said Mary Buckle by virtue of her judgment a lien on said execution sale proceeds prior and superior to that of the other creditors of said S. Ah Mi; (b) Have the said Thompson & Clemons as attorneys aforesaid any lien on or superior right in the said execution sale proceeds for services in obtaining said judgment; (c) That he be instructed by this Court as to whether he avail himself of the services of the said attorneys and assure them of compensation out of the said bankrupt estate, or out of any property recovered in said suits by your petitioner, or at all; (d) And your petitioner prays for such other, further and different relief as the premises may require."

The petition was heard and argued by Thompson & Clemons, attorneys on behalf of Geo. Sea, deputy high sheriff, the petitioner, and Mary Buckle, on the one part and by W. W. Thayer, attorney for R. H. Trent, trustee, on the other part.

In regard to the question of the lien contended for by Mary Buckle, many authorities were cited for and against such contention, her attorneys claiming that the fact of the judgment which she had obtained against S. Ah Mi prior to the beginning of four months previous to the adjudication followed by a levy within the four months, a lien was created which would entitle her to payment of such judgment in full, quoting the com-

mon law on this subject. Whatever may be the common law on this matter, such authority can only affect the practice in this Territory where there is no Hawaiian statutory provision or judicial precedent or Hawaiian national usage to the contrary. *Revised Laws,* sec. 1. We find in the Hawaiian statutes, section 1816 of the Revised Laws, formerly section 1859 of the Civil Code, providing that "every officer receiving a writ of execution issued in due form by any court or judge, shall note thereon the day and hour of its receipt and he shall give priority in levying upon property of the defendant in execution, to the writs received by him according to the order of time in which they are received."

The only specific reference in the statutes as to the creation of a lien in such matters is in laws referring to the lower courts not of record, which provide that no judgment rendered in police justices' courts shall be a lien upon real property until a transcript thereof certified by such justice shall have been docketed in the office of the clerk of the Supreme Court; also, that such justices' judgments, in accordance with the rule made in section 1859 of the Civil Code above referred to, shall be a lien upon the movable property of the defendant in execution not excepted by law from levy from the time and according to the priority of the levy. *Civil Code,* sec. 908. Under these statutes the courts have decided in several cases that a judgment creditor is not entitled to priority of payment over creditors by simple contract, out of the estate of a party deceased insolvent. *Nathan v. Estate of Vida,* 1 Haw. 143. Also, a "judgment of a court of record is not a lien upon real estate in the nature of a subsisting encumbrance." (Syl.) *Lindsey v. Kainana,* 4 Haw. 165.

I think that these statutes and decisions being inconsistent with the theory that judgments were a lien by the common law, disposes of that contention so far as the practice in this Territory is concerned. In the United States, it appears that a lien created by legal proceedings begins when a judgment is levied upon except as otherwise regulated by statute or when

an attachment under *mesne* process is taken out. In the case of a judgment creditor's bill in equity to obtain execution, such bill is regarded as the beginning of execution and as establishing a lien, but the judgment, standing alone and unexecuted, does not create a lien. *In re Beaver Coal Co.,* 6 Am. B. R. 404, note. This is, I think, according to justice, for it would be inconvenient and unjust if the mere fact that a judgment is obtained creates a lien even though such judgment may remain for years without procedings for enforcement.

The case of *Metcalf v. Barker,* 187 U. S. 165, 173: 9 Am. B. R. 36, has the following on this point: " 'It is the execution first begun to be executed, unless otherwise regulated by statute, which is entitled to priority. The filing of the bill, in cases of equitable execution, is the beginning of executing it.' 110 U. S. 717. And the right to payment out of the fund so vested cannot be affected by a subsequent transfer by the debtor, *M'Dermutt v. Strong,* 4 Johns. Ch. 687, or taken away by a subsequent discharge in bankruptcy. *Hill v. Harding,* 130 U. S. 699; *Doe v. Childress,* 21 Wall. 642; *Eyster v. Gaff,* 91 U. S. 521; *Peck v. Jenness,* 7 How. 612."

The judgment in this case having been obtained more than four months before the adjudication, creates no lien and the levy within the four months was within 67f of the bankrupt act and gave no priority and did not relate back to the judgment to the extent of creating a lien by virtue of the fact that the judgment was rendered more than four months before the adjudication.

The instruction of the court, therefore, on the first point, (a), is that Mary Buckle has no lien on the proceeds of the sale by virtue of her judgment but must stand with the other creditors on her right to the assets of the bankrupt.

The second point, (b), is answered in the negative. *In re Austin,* 2 U. S. Dist. Ct. Haw. 210: 13 Am. B. R. 136.

In regard to the third request for instructions, it appears from information furnished by Thompson & Clemons that they acting for the petitioner and perhaps for Mary Buckle as well,

compromised the three replevin cases and the trover case referred to above, and paid the realizations of such compromises to the trustee. Under these circumstances no further reference need be made at present to this point, the compensation of those attorneys being a matter for settlement in the bankruptcy proceedings and the compromise effected by them a question for the trustee to consider and to report his conclusions thereon.

As to a confirmation of the sale as prayed for, counsel for the trustee opposes it on the ground that this court has no jurisdiction to confirm a sale under a circuit court execution. It must be remembered that at the time of the adjudication, certain property of the bankrupt, consisting largely of live stock had been advertised for sale under such execution and such live stock had been collected and was then held at considerable expense; in view of which circumstances and to save the estate from the loss that would have accrued if such arrangements should have been ignored and such live stock either have been turned loose or held until such time as a sale might be made thereof in due form by the trustee, the court authorized the sale to be proceeded with, thus making the officer executing the judgment aforesaid an agent for the time being of this court. As such he proceeded with the sale and has reported the same and asked for confirmation thereof as above set forth. These circumstances bring the sale within the jurisdiction of this court and call for the consideration of the prayer for confirmation. The return of the deputy sheriff is full and detailed, and is, in view of the unusual difficulties attending the sale, satisfactory. The fact that under the circumstances no previous appraisement of the property sold was or could well be made, emphasizes the importance of the approval of the court, if such approval can be justified by all the facts in the matter. I feel that there is no reason against such action and accordingly approve the sale so far as this court is concerned. The petitioner's claim for fees and expenses in making the levy and sale is referred to the bankruptcy proceedings in this

court. *In re Francis-Valentine Co.,* 2 Am. B. R. 522: 94 Fed. Rep. 793.

The petitioner is ordered to deliver to the trustee forthwith all the property and choses in action of the bankrupt in his possession, together with his account of his receipts, expenses and fees in relation to the levy and sale under consideration.